## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 08 2019, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvonne M. Spellers
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of: K.M. (Minor Child),

and

T.G. (Father),
*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

October 8, 2019

Court of Appeals Case No.
19A-JT-379

Appeal from the Wells Circuit Court

The Honorable James Heuer, Senior Judge

The Honorable Kenton W. Kiracofe, Judge

Trial Court Cause No.
90C01-1808-JT-35

**Tavitas, Judge.**

# Case Summary

[1] T.G. ("Father") appeals the termination of his parental rights to K.M. (the "Child"). We affirm.

# Issue

[2] Father raises one issue, which we restate as whether the evidence is sufficient to support the termination of his parental rights to the Child.

# Facts

[3] Ka.M. ("Mother")[1] gave birth to the Child in April 2016. From November 2015 to October 2016, Father was incarcerated for a Level 6 felony resisting law enforcement conviction.[2]

[4] On September 6, 2016, the Wells County Department of Child Services ("DCS") received a report that Mother and her boyfriend were passed out in the home after abusing bath salts. The home was "dirty," and the Child and her two-year-old half-sibling[3] were "filthy." Tr. Vol. II p. 37. DCS removed the children from Mother's care due to "lack of supervision . . . due to caregiver impairment." *Id.*

---

[1] Mother consented to the Child's adoption, and she is not a party to this appeal.

[2] Father also had a 2014 conviction for domestic battery, a Level 6 felony, for a battery against Mother.

[3] Mother consented to the sibling's adoption, and B.H., his father, voluntarily relinquished his parental rights.

[5]     On September 7, 2016, DCS filed a petition alleging that the Child was a child in need of services ("CHINS"). In December 2016, Mother admitted that the Child was a CHINS, and she was ordered to participate in services. Father also admitted that the Child was a CHINS and, in May 2017, the trial court ordered Father to, in part: (1) maintain contact with the family case manager; (2) complete a parenting assessment and complete all recommendations; (3) complete a substance abuse assessment and follow all treatment recommendations; (4) submit to random drug/alcohol screens; (5) complete a psychological evaluation and follow all recommendations; (6) complete a domestic violence assessment program; and (7) attend visitations with the Child.

[6]     After Father's release from jail in October 2016, Father completed paternity testing. DCS referred him for therapeutic visitations with the Child because Father did not have a relationship with the Child at that time. Although Father was scheduled to have therapeutic visitations twice a week, Father only visited the Child on approximately ten occasions between October 2016 and June 2017. Father last saw the Child in June 2017 because the referral was closed for lack of attendance. Additionally, Father failed to complete a parenting assessment or take any parenting classes; failed to complete a psychological evaluation; and did not complete a substance abuse assessment or engage in treatment. Father did take two drug screens during the proceedings, which were negative for illegal substances. Father also completed domestic violence intervention classes in 2017. Other than at court hearings, Father only had

contact with the family case manager on two occasions. Overall, Father failed to make progress or changes to provide a safe, stable environment for the Child and made little effort to complete the court-ordered services.

[7] On June 13, 2018, DCS filed a petition to terminate Father's parental rights to the Child. Father was incarcerated again in August 2018 for domestic battery, a Level 6 felony, and he was sentenced to 912 days with 672 days executed in the Department of Correction. At the time of the termination hearing in January 2019, Father was still incarcerated. Father expected to be released in July 2019. Upon his release, Father planned to live with his grandmother[4] and have employment with a construction company.

[8] The trial court entered findings of fact and conclusions of law terminating Father's parental rights to the Child on January 24, 2019. Father now appeals.

## Analysis

[9] Father challenges the termination of his parental relationship with the Child. The Fourteenth Amendment to the United States Constitution protects the traditional rights of parents to establish a home and raise their children. *In re K.T.K. v. Indiana Dept. of Child Services, Dearborn County Office,* 989 N.E.2d 1225, 1230 (Ind. 2013). "[A] parent's interest in the upbringing of [his or her] child is 'perhaps the oldest of the fundamental liberty interests recognized by th[e]

---

[4] Father testified that his home burned down two months before the termination of parental rights hearing.

[c]ourt[s].'" *Id.* (quoting *Troxel v. Granville,* 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). We recognize that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs.'" *K.T.K.,* 989 N.E.2d at 1230 (quoting *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[10] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re C.G.,* 954 N.E.2d 910, 923 (Ind. 2011). We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)).

[11] Pursuant to Indiana Code Section 31-35-2-8(c), "[t]he trial court shall enter findings of fact that support the entry of the conclusions required by subsections (a) and (b)" when granting a petition to terminate parental rights.[5] Here, the

---

[5] Indiana Code Sections 31-35-2-8(a) and (b), governing termination of a parent-child relationship involving a delinquent child or CHINS, provide as follows:

    (a) Except as provided in section 4.5(d) of this chapter, if the court finds that the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship.

trial court did enter findings of fact and conclusions of law in granting DCS's petition to terminate Father's parental rights. When reviewing findings of fact and conclusions of law entered in a case involving the termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[12] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (A)  That one (1) of the following is true:
>
>> (i)  The child has been removed from the parent for at least six (6) months under a dispositional decree.

---

(b)  If the court does not find that the allegations in the petition are true, the court shall dismiss the petition.

(ii)    The court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child.

(B) that one (1) of the following is true:

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)     that termination is in the best interests of the child; and

(D)   that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016).

## A. Remedy of Conditions Resulting in Removal

[13]   Father challenges the trial court's conclusion that there is "a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied."[6]   I.C. § 31-35-2-4(b)(2).   "In determining whether 'the conditions that resulted in the [Child's] removal . . . will not be remedied,' we 'engage in a two-step analysis.'" *In re E.M.,* 4 N.E.3d 636, 642-43 (Ind. 2014) (quoting *K.T.K.,* 989 N.E.2d at 1231).   "First, we identify the conditions that led to removal; and second, we 'determine whether there is a reasonable probability that those conditions will not be remedied.'"   *Id.*   In analyzing this second step, the trial court judges the parent's fitness "as of the time of the termination proceeding, taking into

---

[6] Father also argues that there was no reasonable probability that the continuation of the parent-child relationship posed a threat to the well-being of the Child.  Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive.  Consequently, the DCS was required to demonstrate by clear and convincing evidence a reasonable probability exists that *either*: (1) the conditions that resulted in the Child's removal or the reasons for placement outside the home of the parents will not be remedied, or (2) the continuation of the parent-child relationship poses a threat to the well-being of the Child. *See, e.g.*, *Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 148 n.5 (Ind. 2005).  The trial court here found a reasonable probability that the conditions that resulted in the Child's removal or reasons for placement outside Father's home will not be remedied, and there is sufficient evidence to support that conclusion.  Accordingly, we do not address whether the continuation of the parent-child relationship poses a threat to the well-being of the Child.

consideration evidence of changed conditions." *Id.* (quoting *Bester,* 839 N.E.2d at 152). "We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination." *Id.* "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id.*

[14] Father contends that the DCS witnesses improperly testified that Father had failed to remedy "the conditions that resulted in this child's initial removal from his care." Tr. Vol. II p. 47. Father argues that he was not present or responsible for the Child's initial removal from Mother's care.

[15] Indiana Code Section 31-35-2-4(b)(2)(B)(i) requires DCS to prove by clear and convincing evidence that "[t]here is a reasonable probability that the conditions that resulted in the child's removal *or* the reasons for placement outside the home of the parents will not be remedied." (emphasis added). Although Father's conduct did not result in the Child's initial removal, "[t]he statute does not simply focus on the initial basis for a child's removal for purposes of determining whether a parent's rights should be terminated, 'but also those bases resulting in the continued placement outside the home.'" *In re N.Q.*, 996 N.E.2d 385, 392 (Ind. Ct. App. 2013) (quoting *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*).

[16] Father was incarcerated at the time of the Child's initial removal. The Child's continued placement outside of Father's home after Father's release from

prison was based on Father's lack of compliance with court-ordered services, lack of connection with the Child, and his new incarceration. Between his release from prison in October 2016 and his new incarceration in August 2018, Father only visited the Child on approximately ten occasions and stopped visiting altogether in June 2017. Father: (1) failed to maintain contact with his family case manager; (2) failed to complete a parenting assessment or take any parenting classes; (3) failed to complete a psychological evaluation; and (4) did not complete a substance abuse assessment or engage in treatment.

Father did take two drug screens during the proceedings, which were negative for illegal substances, and completed domestic violence intervention classes. Father, however, was convicted of domestic battery again after taking the domestic violence intervention classes. Overall, despite being provided a significant amount of time, Father simply failed to demonstrate the ability to care for the Child. The trial court's finding that there is a reasonable probability that the reasons for placement outside Father's home will not be remedied is not clearly erroneous.

### B. Child's Best Interests

Father argues that it was not in the Child's best interests to terminate Father's parental rights.[7] In determining what is in the best interests of a child, the trial

---

[7] Father takes issue with the trial court's statement that DCS's decision regarding placement in foster care rather than kinship care was "probably . . . in the children's best interest . . . ." Tr. Vol. II p. 20. According to Father, this statement somehow implies the trial court failed to find clear and convincing evidence that

court is required to look at the totality of the evidence. *Z.B. v. Indiana Dep't of Child Servs.*, 108 N.E.3d 895, 903 (Ind. Ct. App. 2018), *trans. denied*. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of a parent-child relationship is proper where the child's emotional and physical development is threatened. *K.T.K.*, 989 N.E.2d at 1235. A trial court need not wait until a child is irreversibly harmed such that his or her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.* Additionally, a child's need for permanency is a "central consideration" in determining the best interests of a child. *Id.*

[19] At the time of the termination of parental rights hearing, Father was again incarcerated, had not seen the Child since June 2017, and had no bond with the Child. The Child considered her foster parents to be her parents. The guardian ad litem and the family case manager both testified that termination of Father's parental rights was in the Child's best interest. Given Father's lack of bond with the Child, lack of progress regarding court-ordered services, and his repeat incarcerations, the trial court's finding that termination of parental rights was in the Child's best interest is not clearly erroneous.

---

termination of Father's parental rights was in the Child's best interest. The trial court's statement, however, was made at a hearing regarding Mother's consent to adoption and B.H.'s voluntary relinquishment of his parental rights to the Child's half-sibling. The trial court's statement did not concern Father's parental rights.

# Conclusion

The trial court's termination of Father's parental rights to the Child is not clearly erroneous. We affirm.

Affirmed.

Brown, J., and Altice, J., concur.